DISTRICT OF OREGON
F I L E D
September 29, 2020
Clerk, U.S. Bankruptcy Court

Below is an opinion of the court.

_____
THOMAS M. RENN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| In re | Case No. 19-63318-tmr7 |
|---|---|
| DYLLAN SCHAWN WRIGHT and ANNIE MAXINE WRIGHT, | OPINION |
| Debtors. | |

This matter came before the court on the two pending reaffirmation agreements (Doc. ##19, 20) between Debtors and Oregon State Credit Union (OSCU). Following briefing by the parties and a hearing, at which counsel made oral argument, I took the matters under advisement. Having reviewed the filings, considered the parties' arguments, and conducted my own research, I am ready to rule.

## Jurisdiction

The court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding, as provided in 28 U.S.C. § 157(b)(2)(A) and (O).

## Findings of Fact

The parties agree on the relevant facts. Debtors filed their bankruptcy case on October 31, 2019. They filed a Chapter 7 Individual Debtor's Statement of Intention (part of Doc. #1;

filed 10/31/19) within the deadline outlined in 11 U.S.C. § 521(a)(2)(A).[1] As to the two secured claims held by OSCU, Debtors checked the "Retained" box for the property securing each claim (motor vehicles for both). In the lines following "If retaining the property, I intend to …," Debtors checked the "Other" box and, in the blank line, inserted "Retain, remain current, reaffirm if required."

On November 13, 2019, Debtors' counsel received the Reaffirmation Agreements from OSCU and forwarded them along with various disclosures and instructions to Debtors. On November 19, 2019, both Debtors signed the Reaffirmation Agreements and returned them to their attorney who, in turn, forwarded them to counsel for OSCU on December 6, 2019. On January 31, 2020, OSCU filed the Reaffirmation Agreements. Neither party has raised any objections or issues relating to the timing requirements under § 521(a)(2) and (6), which appear to have been met.

In response to question 11 on the cover sheets for the Reaffirmation Agreements, the "yes" box is checked in answer to the question: "Did an attorney represent the debtor[s] in negotiating the reaffirmation agreement?" Debtors' counsel, however, did not sign the certification[2] by Debtor's Attorney in Part IV of either agreement. The certification section, if completed and signed, indicates counsel's compliance with § 524(c)(3) including that counsel determined that "this agreement does not impose an undue hardship on the debtor or any dependent of the debtor," consistent with the language in § 524(c)(3)(B).

<u>Procedural Posture and the Court's Authority to Hold a Hearing</u>

As part of my review of the Reaffirmation Agreements, OSCU requests that I make certain determinations regarding the parties' respective rights to the collateral in light of the changes made in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) and the Ninth Circuit's ruling in *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 581 F.3d 1104 (9th Cir. 2009). More specifically, OSCU asks that I make the following rulings:

---

[1] Unless otherwise indicated, all subsequent statutory references are to Title 11 of the United States Code (Code).
[2] As used in this Opinion, "certification" is equivalent to the "declaration or affidavit" contemplated in § 524(c)(3).

1. Debtors' stated intent to "Retain, remain current" – known as the ride-though option[3] – does not comply, absent creditor consent, with § 362(h)(1)(A) to prevent stay termination under § 362(h)(1);
2. A reaffirmation agreement without the signed attorney certification is not enforceable under § 524(c), because Debtors were represented during the reaffirmation agreement negotiation process; and
3. Absent an enforceable reaffirmation agreement, Debtors failed to satisfy their obligations under § 362(h), and therefore the automatic stay has been terminated as it relates to the collateral, allowing OSCU to enforce the terms of the underlying debt agreement per § 521(d).

Debtors, for their part, do not ask that I approve the Reaffirmation Agreements or otherwise rule that they are enforceable. Instead, Debtors take the position that, in filing their Statement of Intention along with signing and returning the Reaffirmation Agreements for filing, they satisfied their obligations under §§ 521(a)(2) and 362(h)(1), notwithstanding the fact that their attorney did not sign the certifications. As such, Debtors argue, the automatic stay remains in effect and OSCU may not enforce any ipso facto clauses[4] contained in the underlying agreements. Although Debtors took pains to avoid framing their position as meeting the qualifications of ride-through, that is precisely what they're asking for, as I'll discuss in more detail below.

Both parties agree that, pursuant to § 524(d), I may hold a hearing to determine whether the Reaffirmation Agreements satisfy the requirements § 524(c) and the parties' respective rights in the collateral if they do not. I agree. *See Bay Fed. Credit Union v. Ong (In re Ong),* 461 B.R.

---

[3] Ride-through, considered an alternative to reaffirmation, is where "the debtor continue[s] to make payments as if the bankruptcy had never occurred. The creditor [is] forbidden by the automatic stay (and later, by the discharge injunction) from repossessing the collateral unless the buyer default[s]. If the buyer stop[s] making payments or otherwise default[s], then the creditor could reclaim its collateral but could not pursue a deficiency judgment against the debtor." *Dumont*, 581 F.3d at 1108.

[4] Generally, an ipso facto clause is a provision contained in loan agreements stating that the borrowers will be in default if, among other things, they file a petition for relief under the Code.

559, 564 (9th Cir. BAP 2011) (regardless of authority to approve, the court may "review the reaffirmation agreement to ensure that the requirements of § 524(c) are met"). Debtors suggest that the court may, on its own motion, hold a hearing to make a determination regarding undue hardship, even in cases like this one where the debtors are represented by counsel and the attorney indicates, by not signing the certifications, that the reaffirmation agreements would impose an undue hardship. Debtors do not ask me to make such a determination, and, for the reasons outlined below, I disagree that the Code authorizes the bankruptcy court to independently review and approve a reaffirmation agreement under these circumstances. As such, the Code limits my review of the Reaffirmation Agreements to ensuring that the requirements of § 524(c) are met and, if not, the parties' respective rights to the collateral.

Ride-through After BAPCPA

Debtors have not expressly asked for a ruling that they qualify for ride-through. They tacitly acknowledge, however, that the Reaffirmation Agreements might not be enforceable absent counsel's certification pursuant § 524(c)(3). They also concede that, absent an enforceable agreement, Debtors are not personally liable on the debts after their discharge. Thus, in arguing that the Code prevents OSCU from enforcing any applicable ipso facto clause, Debtors argue, by definition, for ride-through. The question then squarely becomes whether ride-through is available to Debtors post-BAPCPA.

In *Dumont* the Ninth Circuit thoroughly analyzed the impact of BAPCPA on the reaffirmation process and addressed the question of whether—and to what extent—ride-through remains available to chapter 7 debtors. In that case, the debtor indicated in her statement of intention that, as to the car purchased from Ford Motor Credit Company (Ford), "she would retain the car and continue to make the monthly payments." *Dumont*, 581 F.3d at 1107. Analyzing whether Ms. Dumont's statement of intention satisfied §§ 521(a)(2) and 362(h)(1), the court outlined that compliance with both sections requires a debtor to "indicate 'either' surrender 'or' retention; if he chooses the latter, he must indicate 'either redemption, reaffirmation, 'or' assumption [of an unexpired lease]." *Dumont*, 581 F.3d at 1114. While Ms. Dumont "properly stated that she intended to retain the property, she failed to indicate one of the three permissible

means of doing so." *Id.* As such, by operation of § 362(h)(1), the automatic stay terminated with respect to the car and it was no longer property of the estate. *Id.*

> Because Dumont failed to take action required by section 362(h), "nothing in the Code prevented or limited the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor."

*Id.* at 1115 (citing § 521(d)). The court further stated that, "[o]nce Dumont failed to take the action required by section 362(h), federal bankruptcy law no longer prevented Ford from repossessing her car." *Id.* at 1115.

Debtors attempt to distinguish *Dumont* by noting that, unlike Ms. Dumont, they indicated not only an intent to "retain, remain current," but also to "reaffirm if required." Debtors, however, overlook the court's broad discussion regarding ride-through and Congress's intent to limit its availability. The court said the following:

> Given the amendment of section 521(a)(2) and the enactment of section 362(h), it is unlikely that Congress failed to foresee that BAPCPA would have a major impact on ride-through. Accordingly, we assume that Congress intended to make ride-through available in all circuits, or none. The direction and tenor of the changes, which place new duties on debtors and create new sanctions for failure to comply, suggest that Congress did not intend to increase access to ride-through by passing BAPCPA.

*Id.* at 1112. The court goes on to discuss the one "exception" created under BAPCPA in which ride-through is available: as outlined in § 362(h)(1)(B), a debtor is not subject to § 362(h)(1) (and, by extension, § 521(d)) in instances where her statement specifies her intent to reaffirm the debt on the original contract terms, but she is unable to complete such a reaffirmation due to the creditor's refusal to agree. *Id.* at 1114. The court continued:

> If the debtor qualifies for the exception, then it seems that the result would be the same as pre-BAPCPA ride-through. Congress presumably would not have created an "exception" [under § 362(h)(1)(B)] to provide access to an option all debtors had in the first place. If all debtors had the right to elect ride-through in the first instance, the exception would be wholly devoid of content. The traditional rules of statutory construction counsel against that result. This supports a conclusion that ride-through is not available to all.

*Id.* The parties agree that the facts in this case do not fit within the § 362(h)(1)(B) exception.

## Statement of Intention

Debtors' Statement of Intention outlines their desire to "Retain, remain current, reaffirm if required" the collateral securing OSCU's two claims. OSCU argues that this language fails to satisfy §§ 521(a)(2)(A) and 362(h)(1)(A), because it exceeds the scope of what the Code allows; where ride-through is not available, "Retain, remain current" is not a valid option. OSCU further argues that Debtors' stated intent must be clear and that a failure to satisfy § 521(a)(2)(A), by itself, triggers the consequences of § 362(h).

Debtors respond that their Statement of Intention accurately reflects their intentions: they would like to "Retain, remain current" if that option is available and, if not ("if required"), they will reaffirm the debt. As Debtors point out and OSCU concedes, creditors may voluntarily agree to a ride-through and some routinely do so.[5] In those instances, counsel argues, most debtors in bankruptcy, including Debtors in this case, would prefer ride-through over reaffirmation. If the creditor will not agree to a ride-through, debtors will proceed with the reaffirmation negotiation process, as they did in this case. Here, OSCU makes clear that it does not consent to ride-through.

I acknowledge the tension between the requirement that a debtor frame her intent within the options outlined by the Code and the reality that a debtor's good faith intent might differ from those options. Where debtors and creditors retain the freedom to voluntarily waive rights established by the Code and to agree to alternative arrangements, the statement of intention will likely be a debtor's first communication of her intent to pursue such an arrangement. That intended outcome may or may not be a viable option under §§ 521(a)(2)(A) and 362(h)(1)(A), but I am reluctant to issue a ruling that might encourage debtors to obscure their *actual* intent on the form in favor of options that the debtors do not intend to pursue in good faith. Both debtors and creditors should want clarity on the status of their agreements.

---

[5] At the hearing, Debtors' counsel noted that some creditors do not have local counsel to facilitate the reaffirmation process or may simply wish to avoid the expense or administrative burden of preparing, negotiating, and filing the agreements.

Additionally, the statement of intention form (Oregon Local Bankruptcy Form 521.05 (12/1/16), which is consistent with Official Form 108) contemplates that debtors electing to retain the property might intend to do something other than redeem it or reaffirm the debt. The form gives a third option: "Other. Explain (for example, avoid lien using 11 USC § 522(f))" followed by a blank line for debtors to specify their intent. While the form does not supersede the Code sections at issue or usurp the Ninth Circuit's ruling in *Dumont*,[6] other sections in the Bankruptcy Code, such as § 522(f), might provide valid alternatives for treatment of a secured claim under varying circumstances, notwithstanding the question of whether the statement of intention conforms to §§ 521(a)(2)(A) and 362(h)(1)(A). But that issue is not before me, and so I make no determination in that regard.

This case requires me to determine whether Debtors' stated intent to "Retain, remain current, reaffirm if required" satisfies §§ 521(a)(2)(A) and 362(h)(1)(A). As discussed above, under *Dumont*, the ride-through option communicated with "Retain, remain current" is not available post-BAPCPA. By itself, "reaffirm if required," while somewhat ambiguous, is likely a clear enough communication of Debtors' intent to pursue reaffirmation, especially considering their prompt completion and return of the two Reaffirmation Agreements. If OSCU objected to Debtors' statement, it should have promptly rejected the offer and communicated its dissent.

As *Dumont* makes clear, use of the word "either" in § 362(h)(1)(A) requires the debtor to choose "the one or the other" alternative outlined in the section. 581 F.3d at 1114. Here, Debtors' stated intentions are mutually exclusive, and ride-through is not a viable option unless OSCU consents to it. Further, where Debtors still hope to obtain a ride-through over OSCU's objection, they cannot try to minimize the significance of stating "Retain, remain current" by arguing that other creditors in other cases might agree to that treatment.

As noted above, OSCU asks for a determination that, where ride-through is not a valid option, Debtors' use of "Retain, remain current" on the Statement of Intention, by itself, triggers

---

[6] The Ninth Circuit's ruling in *Dumont* regarding the disjunctive alternatives of surrender, redeem, reaffirm, or assume appears limited to options available under §§ 521(a)(2) and 362(h)(1)(A). *Dumont*, 581 F.3d at 1114.

the consequences of a failure to comply with § 362(h). OSCU, however, did not take this position shortly after Debtors filed the Statement of Intention on October 31, 2019. Instead, OSCU continued to accept Debtors' monthly payments and circulated and filed the Reaffirmation Agreements, thereby acting on Debtors' stated intent to "reaffirm, if required." OSCU did not raise the issue regarding adequacy of the Statement of Intention until the reaffirmation hearing held on March 12, 2020, almost five months after Debtors filed the statement. As such, OSCU waived its right to argue that the Statement of Intent fails to satisfy §§ 521(a)(2)(A) and 362(h)(1)(A).

Performance of Intent

Section 521(a)(2)(B) requires the debtor, "within 30 days after the first date set for the meeting of creditors," to "perform his intention." To avoid termination of the stay under § 362(h)(1)(A), the debtor must, if reaffirming the debt, "enter into an agreement of the kind specified in section 524(c)[.]"

Ultimately, what is required for a debtor to enter into an agreement of the kind specified in section 524(c)? Debtors argue that § 524(c) and, by extension, § 362(h)(1)(A) require only that they enter into an agreement with OSCU, not that the agreement be enforceable. To that end Debtors make several arguments about why the attorney certification under § 524(c)(3) either is not required or is not relevant to a determination that they have performed their stated intent. I will address each argument in turn. OSCU, on the other hand, argues that the agreement must satisfy all the requirements for enforceability outlined in § 524(c). More specifically, OSCU argues that, if the agreement does not satisfy the attorney certification requirement of § 524(c)(3), the agreement is not "of the kind specified in section 524(c)."

*a. Attorney Certification*

One bankruptcy court described the importance of the attorney certification as follows:

> Cognizant of the very serious consequences that reaffirmation could have, Congress *through BAPCPA and its additions to § 524*, sought to impose meaningful hurdles into the reaffirmation process. . . . Congress wanted to interject the informed judgment of debtor's counsel into the process. Obviously, Congress did not envision that counsel would merely rubber stamp a client's wishes. Rather, it was counsel's considered reluctance to approve

> *onerous and ill-advised* reaffirmation agreements that Congress hoped to achieve.

*In re Isom*, No. 07-31469-KRH, 2007 WL 2110318, at *3 (Bankr. E.D. Va. July 17, 2007) (emphasis in original). To that end, § 524(c) provides in pertinent part:

> An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title *is enforceable . . . only if*—
> [subsections (1) and (2) omitted]
> (3) such agreement has been filed with the court and, *if applicable*, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subjection, which states that—
>> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
>> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
>> (C) the attorney fully advised the debtor of the legal effect and consequence of—
>>> (i) an agreement of the kind specified in this subsection; and
>>> (ii) any default under such an agreement
>
> ….

(emphases added). For debtors "not represented by an attorney during the course of negotiating an agreement," § 524(c)(6) and (d) place these responsibilities on the court.[7]

Debtors first argue that the "if applicable" language in § 524(c)(3) relates to the attorney's determination regarding undue hardship under § 524(c)(3)(B). "It follows that where an attorney cannot find that an agreement does not impose an undue hardship, or otherwise cannot find that an enforceable agreement is in the debtor's best interest and chooses not to make such a declaration, then such declaration will not be signed and is therefore not applicable." Debtors' Response at 6 (Doc. #32; filed 4/3/20). In other words, Debtors argue that the Code requires the attorney certification contemplated under § 524(c)(3) only if the attorney has determined that it is appropriate to sign it.

Debtors do not cite, nor could I find, any authority that interprets the "if applicable" language in the manner they propose. Moreover, Debtors' interpretation does not flow from a

---

[7] Specifically, for unrepresented debtors, the court must make the undue hardship determination (§ 524(c)(6)(A)(i)), inform the debtor that reaffirmation is not required (§ 524(d)(1)(A)), and advise the debtor of the "legal effect and consequences of—(i) an agreement of the kind specified in subsection (c) of this section; and (ii) a default under such an agreement" (§ 524(d)(1)(B)).

natural reading of the statute. "[W]ords are to be given the meaning that proper grammar and usage would assign them," and "the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose." *Nielsen v. Preap*, 586 U.S. ___, 139 S. Ct. 954, 965 (2019) (internal citations omitted).

It strains reasoning and the rules of grammar to interpret "if applicable" as modifying the clause regarding the attorney's undue hardship determination (§ 524(c)(3)(B)), which occurs two subsections and three clauses later. Paragraphs (A), (B), and (C) of § 524(c)(3) are preceded in the sentence by "accompanied by a declaration or affidavit . . ., which states that—(A) . . . (B) . . . ; and (C) . . ." As such, they are dependent clauses[8] that describe what the declaration or affidavit must state. The "if applicable" clause should be read in context and most naturally applies to the clause that immediately follows: "and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor . . . ." "[I]f applicable" indicates that the declaration or affidavit requirement is dependent on a condition being fulfilled. "[A]ccompanied by a declaration or an affidavit of the attorney that represented the debtor" assumes the debtor is represented by an attorney. If, however, the debtor is not represented, there is no attorney to complete a declaration or affidavit. Thus, the most logical interpretation of "if applicable" treats the declaration or affidavit requirement as being conditioned on the debtor being represented by an attorney. If she is unrepresented in the course of negotiating the reaffirmation agreement, the requirement is not "applicable." If the debtor has an attorney, § 524(c)(3) requires, as a condition of enforceability, a declaration or affidavit that includes the several certifications as outlined in paragraphs (A), (B), and (C).

Debtors next argue that, absent a signed declaration from the attorney, § 524(d) permits the court to hold a hearing, even if the debtor is represented, "so long as the court deems it

---

[8] "A dependent clause commonly serves one of several functions: the direct object of a verb {everyone believed **that the note was genuine** [the *that*-clause is the direct object of *believed*]}; an adjectival clause modifying a noun element {he **who hesitates** is lost [*who hesitates* adjectivally modifies *he*]}; an adverbial clause modifying a verb or verb phrase {I bought the car **despite my father's warning not to** [the *despite*-clause modifies the verb *bought*]}." *The Chicago Manual of Style* ¶ 5.225 (17th ed. University of Chicago Press 2017) (emphases in original).

Page 10 of 18 - OPINION

Case 19-63318-tmr7    Doc 41    Filed 09/29/20

necessary." By this argument, Debtors seem to suggest that the court may, if it so chooses, cure any deficiencies under § 524(c)(3) if the attorney does not sign the certification. Acknowledging that § 524(d) outlines the duties of the court with regard to unrepresented debtors, Debtors argue that § 524(d) "remains silent" regarding whether the court may hold a hearing for represented debtors and the scope of the court's authority in such a hearing. I disagree.

Reading § 524(c)(3) and (6) together with § 524(d) and considering the consistent language between the subsections, it is clear Congress intended to outline the requirement that either counsel or the court perform three important functions: inform debtors that reaffirmation is not required; advise debtors about the legal effect and consequences of reaffirmation and a default under such an agreement; and determine that such an agreement does not impose an undue hardship. Congress took care to consistently designate the entities charged with fulfilling these core functions: counsel for represented debtors; the court for unrepresented debtors. It also presumably recognized that debtor's counsel sits in a better position both to determine whether reaffirming the debt would impose an undue hardship and to provide candid legal advice regarding the effect of reaffirmation.

> As the Bankruptcy Appellate Panel has stated:
>
> Neither does § 105 permit bankruptcy courts to make independent assessments of reaffirmations between represented debtors and creditors. . . . Because § 524 does not provide bankruptcy courts the authority to make a best interest analysis of properly executed reaffirmation agreements by represented debtors, there is no statutory authority to expand the narrowly defined exceptions to the right of debtors to contract freely with their creditors, either as to occasions for judicial review or as to the time period provided for such review.

*Ong*, 461 B.R. at 564 (internal citation omitted). Although the reaffirmation agreement at issue in *Ong* was signed by the debtor's attorney, the outcome is the same when the debtor's attorney does not sign the certification: the court "may only review the reaffirmation agreement to ensure that the requirements of § 524(c) are met." *Id.* The court's authority to approve a reaffirmation agreement is limited to situations where (1) the debtor is not represented by counsel during the course of negotiation; or (2) the debtor has counsel who signed the certification, but the presumption of undue hardship arises, as outlined in § 524(m)(1). *See In re Harvey*, 452 B.R. 179, 180 (Bankr. W.D. Va. 2010). "The Bankruptcy Code does not offer a mechanism for the

court to independently approve a reaffirmation agreement under circumstances in which a debtor's attorney has not executed the declaration required by 11 U.S.C. § 524(c)(3)." *In re Barron*, 441 B.R. 131, 134 (Bankr. D. Ariz. 2010) (lack of certification makes agreement unenforceable).

In this case, Debtors were represented by counsel during the course of negotiating the Reaffirmation Agreements and indicated so on the forms. As such, to be enforceable, § 524(c)(3) requires that they be accompanied by a certification by their attorney. Counsel's decision not to sign the certifications rendered the Reaffirmation Agreements unenforceable. Because Debtors were represented, I do not have authority to independently review or approve them, and the Code does not give me the ability to somehow make the agreements enforceable.

    b. *Enforceability of "an agreement of the kind specified in section 524(c)"*

This brings us back to the question of whether the Reaffirmation Agreements must be enforceable in order to satisfy § 362(h)(1)(A). That section states in part:

> [T]he stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, . . . and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2)—
>     (A) to file any statement of intention required under section 521(a)(2) . . . and, if retaining such personal property, either redeem such personal property pursuant to section 722, *enter into an agreement of the kind specified in section 524(c)* applicable to the debt secured by such personal property, or assume such unexpired lease . . . .

§ 362(h)(1) (emphasis added).

The Supreme Court asserts that Acts of Congress "should not be read as a series of unrelated and isolated provisions." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995). The "normal rule of statutory construction" is that "identical words used in different parts of the same act are intended to have the same meaning." *Id.* (internal citations omitted). "It is necessary and required that an interpretation of a phrase of uncertain reach is not confined to a single sentence when the text of the whole statute gives instruction as to its meaning." *Maracich v. Spears*, 570 U.S. 48, 65 (2013). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal

citations omitted). Therefore, to understand what is required under § 362(h)(1)(A) by "enter into an agreement of the kind specified in section 524(c)," we must look for guidance in the other instances in the Code where that same language occurs.

The phrase appears in § 524(c)(3) specifying the required contents of an attorney's certification as follows:

> (C) the attorney fully advised the debtor of the legal effect and consequences of—
>     (i) *an agreement of the kind specified in this subsection* [524(c)]; and
>     (ii) any default under such an agreement[.]

(emphasis added). The phrase occurs twice in § 524(d):

> If a discharge has been granted and if the debtor desires to make *an agreement of the kind specified in subsection (c) of this section* and was not represented by an attorney during the course of negotiating such an agreement, the court shall hold a hearing . . . and at such hearing the court shall—
>     (1) inform the debtor—
>         (A) [omitted]
>         (B) of the legal effect and consequences of—
>             (i) *an agreement of the kind specified in subsection (c) of this section*; and
>             (ii) a default under such an agreement[.]

§ 524(d) (emphases added). The language used in § 521(a)(6) is slightly different, but still relevant to our analysis. Section 521 outlines the debtor's duties, and provides in part:

> (a) The debtor shall—
>     [(1) through (5) omitted]
>     (6) in a case under chapter 7 of this title in which the debtor is an individual, not retain possession of personal property as to which a creditor has an allowed claim for the purchase price secured in whole or in part by an interest in such personal property unless the debtor . . . either—
>         (A) *enters into an agreement with the creditor pursuant to section 524(c)* with respect to the claim secured by such property; or
>         (B) redeems such property….

(emphasis added).

"[I]n order to protect debtors from compromising their fresh start by making unwise agreements to repay such debts, the Bankruptcy Code sets out various procedures and requirements for reaffirmation agreements." *Ong*, 461 B.R. at 562. As I have already discussed, § 524(c)(3)(C) and (d)(1)(B) outline the requirement that, for a debtor who intends to proceed with reaffirmation, either counsel (for a represented debtor) or the court (for an unrepresented

debtor) inform her about the "legal effect and consequences" of reaffirmation and "a default under such an agreement." Where there is no legal effect and consequence of an *un*enforceable agreement or a default thereunder, it would be a fruitless exercise to require counsel or the court to spend time advising a debtor about an unenforceable agreement. Because advice regarding a nondischargeable agreement (rather than an unenforceable one) is what a debtor needs in order to better protect her fresh start, subsections 524(c)(3)(C) and (d)(1)(B) are meaningful only if we interpret "an agreement of the kind specified in [524(c)]" as pertaining to an enforceable reaffirmation agreement not subject to the debtor's anticipated discharge order. This interpretation is also consistent with the additional disclosure requirements added by BAPCPA to § 524(k)(3)(J) regarding nondischargeability of reaffirmed debt.

   Section 521(a)(6) was also added to the Code by BAPCPA (but applies only to purchase-money financing) and provides further support, because it dovetails with § 521(a)(2)(A) by stating that, if the debtor wants to retain the property, she must either redeem the property or "enter into an agreement with the creditor pursuant to section 524(c)." Interpreting § 521(a)(6)(A) as pertaining to either an enforceable or unenforceable agreement would take us back to ride-through, as § 521(a)(6)(A) would provide a basis for the debtor to retain possession absent an enforceable reaffirmation agreement. For the reasons outlined above, ride-through is unavailable under § 521(a)(2)(A). As such, I see no basis to interpret § 521(a)(6) as permitting an option—such as executing an unenforceable reaffirmation agreement—that is unavailable for satisfying any other section. Moreover, permitting a debtor to satisfy § 521(a)(6) by executing an unenforceable agreement would render § 521(a)(6)(A) superfluous or insignificant, as it would allow a debtor to retain the property in exchange for taking formal, but ultimately meaningless, steps to execute a document lacking any legal value or consequence. The better interpretation of § 521(a)(6) is to read "enter into an agreement" as "enter into an *enforceable*

agreement."[9] This gives effect and significance to all clauses within the subsection and is consistent with the same language in § 524(c)(3) and (d)(1), as well as *Dumont*.[10]

Where "identical words used in different parts of the same act are intended to have the same meaning," *Gustafson*, 513 U.S. at 570, the "enter into an agreement of the kind specified in section 524(c)" language in § 362(h)(1)(A) has the same meaning it has in §§ 521(a)(6), 524(c)(3)(C), and (d)(1). Therefore, to satisfy § 362(h)(1)(A) through the reaffirmation process, the debtor must enter into an enforceable agreement that satisfies § 524(c). In this case, where the two Reaffirmation Agreements do not satisfy § 524(c)(3) and are unenforceable, Debtors have not "enter[ed] into an agreement of the kind specified in section 524(c)" as required by § 362(h)(1)(A).

As to this conclusion, I disagree with other courts holding that, if the debtor timely files her statement of intention and executes and files a reaffirmation agreement, she satisfies her obligations under §§ 521(a)(2) and 362(h)(1), regardless of whether the agreement is enforceable. *See, e.g., In re Moustafi*, 371 B.R. 434, 438-39 (Bankr. D. Ariz. 2007); *In re Bowers*, No. 07-60126-fra7, 2007 WL 2163472, at *3 (Bankr. D. Or. July 26, 2007); and *Isom*, 2017 WL 2110318, at *4. These cases, however, all pre-date *Dumont* and assume the availability of ride-through. *Moustafi*, 371 B.R. at 439 ("because the Debtor has complied with § 521(a)(2), [creditor] may not repossess the Nissan as long as the Debtor is current on her payments and insurance obligations"); *Bowers*, 2007 WL 2163472, at *3 ("Debtor could retain the vehicle merely by staying current on the payments"); and *Isom*, 2017 WL 2110318, at *4

---

[9] The legislative history, which is clearer than the statutory text itself, supports this interpretation. The former states that the new language under § 521(a)(6) "provide[s] that an individual who is a chapter 7 debtor may not retain possession of personal property securing, in whole or in part a purchase money security interest unless the debtor, within 45 days after the first meeting of creditors, *enters into a reaffirmation agreement with the creditor*, or redeems the property." H.R.Rep. No. 109-31(I), pt. 2, at 70-71 (2005) (emphasis added).

[10] In dicta, the court states: "[h]aving decided that section 521(a)(2)(C), in conjunction with section 362(h), disallows ride-through, we need not consider whether ride-through may also have been terminated under the provisions of section 521(a)(6). We merely note that the existence of section 521(a)(6) provides further evidence of Congress's intent to eliminate—or at least restrict—ride-through." *Dumont*, 581 F.3d at 1118 (footnotes omitted).

("[t]he consequences arising from § 521(d) of the Bankruptcy Code are triggered upon a debtor's failure to enter into the appropriate agreement, not by counsel's refusal to endorse the agreement or by the court's inability to approve the agreement. . . . The Creditor may not repossess its collateral without violating the automatic stay and the discharge injunction unless there is a subsequent payment or insurance default"). These cases also reflect a type of judicial mitigation of the potentially harsh consequence, from a debtor's perspective, of repossession in instances where the debtor wants to reaffirm the debt, has done everything required of her, and likely depends on the vehicle to care for herself and her dependents. While there may be some practical merit to this approach, Congress clearly intended to elevate the role and importance of counsel in the reaffirmation process and to force counsel and debtors to make difficult choices regarding the surrender or retention of secured personal property. In a thoughtful and well-reasoned opinion, the Bankruptcy Court for the Western District of Virginia encapsulates the parties' responsibilities and the limited role of the court as follows:

> [I]t is clear that the general intent of Congress in the enactment of "BAPCPA," with respect to debts secured by automobiles and other personal property, was to eliminate the "ride through" option to bankruptcy debtors which enabled them to retain the benefit of the original arrangements with the creditors, i.e. retention of the possession and use of the vehicle or other property for so long as payments were maintained in a current status, without re-assuming the burden of legal liability upon the debt in the event it might later appear advantageous to let the collateral go back to the creditor. Although the framework created by the statutory language to carry out this general intent clearly has a "hole" in it, the Court, after considerable soul searching, concludes that it is not appropriate for it to participate in any process by which bankruptcy debtors represented by counsel are enabled to obtain the benefit of a so-called "ride through" option by the simple expedient of counsel, in difficult factual situations, neither signing the certification(s) provided by the statute nor acting as a "gate keeper" by saying "no to his or her client, but standing aside, as it were, while the client signs the reaffirmation agreement, returns it to the creditor, and then the creditor files it with the court so a hearing can be set with the court making a determination to approve or disapprove the reaffirmation agreement just as if the debtor were proceeding without the benefit of counsel. In such a situation the Court concludes that such an agreement has no more legal effect than one signed by the debtor and the creditor but not certified by debtor's counsel and never filed with the court. *To do otherwise inevitably entails the Court acquiescing in situations where reaffirmations take on a life of their own and move forward in those cases where counsel is unwilling in good faith to sign the certification(s) needed for the reaffirmations to be effective but the client is unwilling to accept the consequences of the attorney's exercise of his or her professional responsibility.* The statute does not impose that requirement only when the burden of accepting it is light and willingly accepted. Neither does it authorize

> the bankruptcy court to expand its authority by taking over and making the call when counsel is unwilling to do so. *For the Court nevertheless to do so, particularly in circumstances in which court approval of the reaffirmation is doubtful, results in a very powerful incentive to debtors and their counsel not to make the hard choices themselves but to try and put them before the court and by a process of some judicial alchemy turn dross into gold, i.e., obtain the benefit of the "ride through" option without having incurred the burden of re-assumption of liability upon the obligation.* This frankly is a slippery slope both for counsel and the Court, which concludes that the best thing to do when asked to step onto such a slope is to decline the opportunity.

*In re Harvey*, 452 B.R. 179, 186-87 (Bankr. W.D. Va. 2010) (emphases added).

### Enforceability of Ipso Facto Clauses

"The parties' contract, in conjunction with state law, determines when a debtor has defaulted on an automobile loan." *Dumont*, 581 F.3d at 1115. Although certain Code provisions limit the enforceability of contract clauses that put a party in default for filing for bankruptcy (ipso facto clauses), the Code lacks a general prohibition on their enforceability. In the context of chapter 7 cases affecting collateral not subject to an executory contract or unexpired lease (see § 365(e)(1)), the Code affirmatively states in § 521(d) that it does not affect an ipso facto clause's enforceability:

> If the debtor fails timely to take the action specified in subsection (a)(6) of this section, or in paragraphs (1) and (2) of section 362(h), with respect to property . . . as to which a creditor holds a security interest . . . , nothing in this title shall prevent or limit the operation of a provision in the underlying lease or agreement that has the effect of placing the debtor in default under such lease or agreement by reason of the occurrence, pendency, or existence of a proceeding under this title or the insolvency of the debtor.

For the reasons outlined above, Debtors in this case have failed to satisfy § 521(a)(2) and paragraphs (1) and (2) of § 362(h). Thus, nothing under the Bankruptcy Code prevents or limits the operation of an ipso facto clause contained in Debtors' underlying agreements with OSCU. § 521(d). As *Dumont* instructs, § 521(d) does not give OSCU any additional substantive rights to the collateral; it simply "removes the last remaining impediment under federal bankruptcy law to enforcement of an ipso facto clause that already exists." 581 F.3d at 1115.

### Conclusion

For the reasons outlined above, counsel's decision not to sign the attorney certification renders the reaffirmation agreements between Debtors and OSCU unenforceable. Because they are unenforceable, they are not "agreement[s] of the kind specified in § 524(c)," as that phrase is

used in § 362(h)(1)(A). As such, the automatic stay terminates and, pursuant to § 521(d), the Code does not prevent OSCU from enforcing any ipso facto clauses contained in the parties' underlying agreements. These are my findings of fact and conclusions of law under Fed. R. Bankr. P. 7052. I will enter a separate order consistent with this Opinion.